**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JESSE OWENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-13-279-FHS |
| ) | |
| WARDEN KEITH, CHIEF OF ) | |
| SECURITY COTTON, JAILER ) | |
| YANDELL, MS. WRIGHT, ) | |
| LT. BOWMAN, CORRECTIONS ) | |
| CORPORATION OF AMERICA, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter comes before the Court on the Defendants' Motion for Summary Judgment (Dkt. # 34). Plaintiff filed a response on July 28, 2014 (Dkt. # 35). Defendants' filed their reply on August 11, 2014 (Dkt. # 41).

Plaintiff, an inmate incarcerated at a private prison operated by the Corrections Corporation of America brings this action under the authority of 42 U.S.C. § 1983 seeking compensatory damages and punitive damages for alleged constitutional violations occurring during his incarceration at Davis Correctional Facility ("DCF") in Holdenville, Oklahoma. In his first cause of action, Plaintiff alleges his Eighth Amendment constitutional rights were violated by Defendants when they failed to protect him from inmate violence on June 20, 2011. In his second cause of action, Plaintiff alleges Defendant Corrections Corporation of America failed to properly staff the DCF and failed to properly train its employees regarding

the prevention of inmate attacks or how to protect inmates once an attack started thereby causing a violation of his Eighth Amendment rights.  In his third cause of action, Plaintiff alleges Defendant Keith implemented, adopted, or allowed to continue in operation official policies, procedures and/or customs of failing to protect inmates after and during altercations with other inmates and that he failed to properly train his employees thereby causing a violation of his Eighth Amendment rights.  Finally, in his fourth cause of action, Plaintiff alleges that the defendants actions were willful, wanton, intentional, and with reckless disregard for the rights of Plaintiff and thus, he is entitled to recover punitive damages against the Defendants.

**STATEMENT OF UNDISPUTED FACTS**

1.  On May 26, 2011, at approximately 7:03 a.m., inmate Gary Griffin was attacked by inmates Dedrick Bloss and Jerermiah Cline, because he would not submit to the United Aryan Brotherhood's ("UAB") strong arm tactics.  Both inmate Griffin and inmate Bloss sustained injuries which required medical attention.

2. After an investigation by DCF staff, it was determined members of the UAB, inmates Bloss and Cline, had approached inmate Griffin in his cell and a fight broke out.  Inmate Andrew Hudson was identified as the UAB gang leader who had ordered the assault.

3.  Prior to the May incident, Plaintiff had been identified by the Oklahoma Department of Corrections as a gang member of the

UAB. Additionally, Plaintiff's regular exercise partner was a high-ranking member of the UAB.

4. Although Plaintiff claims he told his case manager he had punched inmate Bloss so hard that Bloss was knocked out of his cell, and therefore, he was concerned for his safety, Plaintiff also testified he did not give the prison staff any information which they could use against him. Dkt. # 35-2, at p. 107. Moreover, after the May 26, 2011 incident, Plaintiff admits he did not file a request to staff asking to be placed in protective custody, he did not he file a grievance with the warden asking to be placed in protective custody and he did not file an emergency grievance with the Oklahoma DOC asking to be placed in protective custody.

5. No prison staff member actually observed Plaintiff assault inmate Bloss. As a result, Plaintiff did not receive any disciplinary misconduct charges from the May 26, 2011 incident. Inmates Bloss, Cline and Hudson each received disciplinary misconduct charges arising out of the May 26 assault.

6. After the May 26 incident, Plaintiff testified he sought out gang members of the UAB and was told by the gang members there would be no retaliation for his assault of inmate Bloss.

7. On June 20, 2011, at approximately 4:48 a.m., Plaintiff was assaulted just outside the exit door of the chow hall by

inmates Smrcka and Delay, both of whom were known by Plaintiff to be UAB gang members.

8. Plaintiff did not know before the June 20th assault that the UAB had plans to assault him and he had not received any *credible* warnings prior to the assault which indicated he was at risk of an assault by the UAB. Plaintiff also had not had any problems with inmates Smrcka or Delay prior to this assault.

9. Following the May 26 incident and before the June 20 incident, Plaintiff nor his cellmate received any notes or written warnings indicating Plaintiff was at risk of harm from the UAB prison gang.

10. During the early evening of June 19, 2011, however, while cutting another inmate's hair, Plaintiff was verbally warned by an inmate to "watch out" because "[UAB] were told to get me at whatever cost or whatever it took, by all -- yeah, 'by all means necessary.'" Dkt. # 44 at pp. 15 & 16. Plaintiff did not take this warning seriously and, therefore, did not advise any staff members at DCF about it. Plaintiff also never requested placement in protective custody.

11. Correction officers Eller and Hopkins were the first to respond when plaintiff was assaulted. While running toward the fight, these officers used their radios to report the incident and additional officers responded. Additionally, these officers repeatedly gave verbal commands to inmates Smrcka and Delay to stop

4

fighting and to stay where they were. Since the inmates were armed and the officers were not armed, the officers did not attempt to intervene in the fight; rather, their goal was to deactivate the situation. The inmates eventually stopped the assault and ran towards Officers Eller and Hopkins. They got past the officers and ran towards their assigned housing unit. They got inside their housing unit and closed the outer door, a door that is controlled by central control and can not be opened by officers on the floor.

12. Inmates Smrcka and Delay were apprehended by security officers and taken off of their housing unit.

13. Plaintiff was taken to DCF's medical facility and then transported by ambulance to Holdenville General Hospital. Later, plaintiff was transferred to the OU Medical Center in Oklahoma City, Oklahoma, where he received treatment for his eye injury.

14. Inmates have the ability to request placement in protective custody or they can request to be separated from specific inmates if the believe they are at risk of harm. Plaintiff was aware that he could request placement in protective custody, but he never made such a request while confined within the Oklahoma Department of Corrections or, specifically, while confined at the DCF.

## **LEGAL ANALYSIS**

Summary judgment is appropriate where there is no dispute of material facts and the moving party is entitled to judgment as a

matter of law.  Fed.R.Civ.P.56.  When presented with a summary judgment motion, this Court must determine whether there "are any genuine factual issues that properly can be resolved only by the finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  When evaluating a motion for summary judgment, this Court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988).  The party opposing summary judgment, however, "may not rest upon mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

**I.  Failure to protect**

In his first cause of action, plaintiff alleges Defendants Warden Keith, Chief of Security Cotton, Jailer Yandell, Ms. Wright, Gang Task Force and Lt. Bowman violated his Eighth Amendment rights by failing to protect him from an inmate attack on June 20, 2011. As a result, Plaintiff alleges he was maliciously and violently attacked causing significant injuries.

"To establish a cognizable Eighth Amendment claim for failure to protect [an inmate from harm by other inmates], the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm[,] the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006). To put it another way, the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996). In the context of failure to protect, deliberate indifference is something more than mere negligence; it is equivalent to "recklessness," in which " a person disregards a risk of harm of which he is aware." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). In *Howard v. Waide*, 534 F.3d 1227, 1243, (10th Cir. 2008), the Court indicated the evidence must show *actual knowledge* of the risk of harm on the part of prison officials.

Additionally, in order to successfully assert a § 1983 claim under the Eighth Amendment for failure to protect, a plaintiff must show personal involvement or participation in the incident. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). "[A] supervisor will not be liable under § 1983 for the actions of a subordinate unless an 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal

7

participation or his failure to supervise." *Grimsley v. MacKay*, 93 F.3d 676, 679-682 (10th Cir. 1996)(citing *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993)).

Plaintiff has not established that he was incarcerated under conditions posing a serious risk of harm. Specifically, under the facts of this case, Plaintiff was transferred to DCF by the Oklahoma Department of Corrections on May 8, 2009. At the time of his transfer, Plaintiff was classified as a medium security inmate. In January, 2011, Plaintiff met with his housing unit manager and requested minimum security housing but asked to remain at DCF. Dkt. # 34-3. Plaintiff admits after the May, 26, 2011 incident, he did not file a request to staff asking to be placed in protective custody, nor did he file either a grievance with the warden asking to be placed in protective custody or an emergency grievance with the Oklahoma DOC asking to be placed in protective custody. Moreover, according to prison records, Plaintiff was an avowed member of the UAB and he regularly exercised with a high-ranking member of that prison gang. Dkt. # 34-4.

While claiming prison officials should have known he was in danger because he was "involved in an altercation with members of the prison security threat group 'UAB'" on the morning of May 26, 2011, he never volunteered information regarding his involvement to prison officials. Rather, Plaintiff argues the officials should have known of his involvement because he was observed by one prison

8

guard leaving the cell of inmate Bloss and when inmate Bloss was checked by medical personnel he told the medical staff that he was "assaulted in his cell." Further, Plaintiff admits on the evening of June 19, 2011, while cutting another inmate's hair, being told by the inmate (whose name he can't remember) to watch out because "[UAB] were told to get [Plaintiff] at whatever cost or whatever it took, by all -- yeah, 'by all means necessary.'" Dkt. # 44, at pp. 15-16. Plaintiff ignored this warning, however, and did not mention it to anyone at DCF. *Id.*, at p. 17. Therefore, this Court finds Plaintiff has failed to establish that he was incarcerated under conditions imposing a serious risk of harm.

Further, based upon the facts herein, Plaintiff has alleged no facts to establish what, if anything, Defendants Warden Keith, Chief of Security Cotton, or Jailer Yandell did to violate Plaintiff's rights or to establish that they personally participated in the deprivation of Plaintiff's rights. Defendant Warden Keith could not have been personally responsible for plaintiff's injuries as he had not been the Warden at DCF since August 2010. While stating in response to the Defendants' Motion for Summary Judgment, Plaintiff "told Case Manager Worsham that he had punched inmate Bloss, a UAB member, and knocked him out of his cell" and Plaintiff "also told Worsham that he was concerned for his safety,"[1] the deposition of plaintiff indicates he couldn't

---

[1] *See*, Dkt. # 35, at p. 5.

9

even remember the name of his case manager at the time he supposedly gave a verbal statement and plaintiff readily admitted he did not give the prison staff anything to "use against me." Dkt. # 35-2, at p. 107. If plaintiff had told his case manager or Chief of Security Cotton that he had punched Bloss, that information could have been used against him. Moreover, Plaintiff's testimony is not consistent. At one point, Plaintiff claims he told Chief Cotton what the plaintiff had done to inmate Bloss within a short period of time after it happened. *Id*., at p. 147. At another point, Plaintiff testified that he did not ask to speak with the warden, the chief of security, any of the assistant wardens or any of the security captains after the May 26th incident or before the June 20th incident. *Id*., at p. 127.

Additionally, although alleging in his complaint Defendant Wright and other jailers witnessed his prior altercation with two members of the Aryan brotherhood, he presents no evidence to establish that any of the defendants personally observed him having an altercation with UAB members prior to June 20, 2011 and Defendant Wright signed an affidavit stating she did not see anyone hit inmate Bloss or see inmate Bloss hit anyone. Dkt. # 34-7, at p. 4. While Plaintiff alleges Lt. Bowman "personally observed the attack of June 20, 2011, and failed to intervene or attempt to stop the attack in anyway", the records in this case establish that Lt. Bowman was not present at the prison facility on June 20, 2011, at

the time of the incident.  Accordingly, this Court finds Plaintiff has failed to establish either that he was incarcerated under conditions posing a substantial risk of serious harm or that the defendants were deliberately indifferent to his safety.  Therefore, summary judgment is granted to the Defendants on Plaintiff's Eighth Amendment failure to protect claim.

**II.  Failure to properly staff and properly train employees**

In his second cause of action, Plaintiff alleges the Defendant Corrections Corporation of America failed to properly staff the DCF and failed to properly train its employees regarding the prevention of inmate attacks or how to protect inmates once an attack started.  In *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999), the Tenth Circuit held, in order to prove a claim of failure to train, a plaintiff must identify a specific deficiency in the training program which is closely related to his ultimate injury and must prove that deficiency actually caused the guard to act with deliberate indifference to his safety.

In an attempt to prove that the prison was not properly staffed on the day of the attack on Plaintiff, Plaintiff relies on a court case out of Idaho and a newspaper article from Oklahoma to argue CCA routinely falsifies its prison staffing records.  In this case, however, the staffing plan utilized at DCF was approved by the Oklahoma Department of Corrections and all mandatory security positions were not only scheduled but were manned on both June 19,

2011 and June 20, 2011. *See*, Dkt. # 34-15. Officers were posted in the housing units and dining hall and the metal scanner in the dining hall was operational. Plaintiff has presented no evidence to establish that the staff at DCF did not properly respond to the attack on Plaintiff or that there were inadequate staff to fully respond. Moreover, plaintiff has not identified any specific deficiencies in the training program utilized at DCF. Accordingly, summary judgment is granted to Defendant CCA on Plaintiff's failure to properly staff and properly train employees.

### III. **Unconstitutional policies, procedures, and/or customs**

In his third cause of action, Plaintiff alleges Defendant Warden Keith "implemented, adopted, or allowed to continue in operation official policies, procedures, and/or customs of failing to protect inmates after and during altercations with other inmates." He also alleges Defendant Keith "failed to properly staff DCF" and "failed to properly train his employees regarding how to protect inmates from attacks by other inmates and/or how to properly intervene and protect inmates once an attack has begun." As previously indicated, Defendant Warden Keith had not been the Warden at DCF since August 2010. Therefore, he can not be held personally liable for violation of Plaintiff's Eighth Amendment rights, which allegedly occurred on June 20, 2011.

## Conclusion

For the reasons stated herein, this Court **grants** the Defendants' Motion for Summary Judgment (Dkt. #34) and hereby dismisses this action against the Defendants with prejudice.

**IT IS SO ORDERED** on this 12th day of November, 2014.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma